UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                                          Bankruptcy No. 05-31171
                                                                                                Chapter 7
Allen M. Kraft and Chondra L. Kraft,

                Debtors.
_____/

Farmers Crop Insurance Alliance, Inc.,

                Plaintiff,

              v.                                                                  Adversary No. 07-7030

Allen M. Kraft and Chondra L. Kraft,

                Defendants.
_____/

**MEMORANDUM AND ORDER**

      This case is before the Court on Motion for Summary Judgment filed by Plaintiff Farmers Crop Insurance Alliance, Inc. ("Farmers Crop"), on August 8, 2008.

      By Complaint filed October 8, 2007, Farmers Crop commenced the above-captioned adversary proceeding seeking a determination that it overpaid Debtors on an indemnity claim and that the $498,778.00 indemnity overpayment is nondischargeable under section 523(a)(2)(A) of the United States Bankruptcy Code because Debtors knowingly and intentionally obtained the payment by false pretenses, false representation, and actual fraud. Farmers Crop further argues that 20% of the $41,302.00 premium amount, interest on the indemnity and premium debts, and costs Farmers Crop incurred to collect the debts are also nondischargeable. In the alternative, Farmers Crop argues that all of these amounts are postpetition debts. Answering, Debtors deny the allegations.

The matter was heard on November 10, 2008. The following facts derive from the pleadings, depositions and other discovery materials, and affidavits filed in this case.

## I.  FACTUAL BACKGROUND

In 2003, Allen Kraft, Harold Tweeten, and Wesley Doepke partnered to grow irrigated potatoes in Burleigh County, North Dakota. Although all were experienced farmers, they did not have experience growing potatoes. The three farmers agreed to share equally in the potato crop.

For crop insurance, they turned to agent Donald Streifel of the Painted Wood Agency, Washburn. Streifel was an experienced crop insurance agent and farmer. In 2003, Streifel was an agent of North Central Crop Insurance, a predecessor of Farmers Crop. Streifel had been selling crop insurance to Kraft, Tweeten and Doepke individually for many years, but he had never before written a crop insurance policy on potatoes for any farmer.

Under the federal crop insurance program, crop coverage is only available in counties where Farmers Crop has not issued actuarial documents permitting such coverage. For the 2003 crop year, Burleigh County was a county for which Farmers Crop had not published actuarial documents for potatoes. Farmers Crop (and its administrator, USDA Risk Management Agency ("RMA")) may agree to insure crops in counties with no actuarial documents through a written agreement. For counties with no actuarial documents, RMA requires an applicant to provide acceptable records of his actual yields of a particular crop for at least the most recent three consecutive crop years to support a written agreement application for that crop. For the 2003 crop year, the federal government did not allow potato coverage in Burleigh County without review and approval from the federal government in the form of a written agreement.

2

On February 7, 2003, Kraft signed his 2003 crop insurance application to the predecessor to Farmers Crop. The 2003 policy was applied for solely in Allen Kraft's name, covering potatoes in Burleigh County to be grown by Kraft, Tweeten and Doepke as equal owners.

Kraft testified that Streifel told him he needed to partner with another potato producer and asked Kraft if he knew anybody with whom Kraft could partner. Kraft called Tom Sanders, one of two shareholders in S&H Potato, Inc. Kraft knew Sanders from custom-combining work for which S&H had hired Kraft, and Kraft called Sanders and asked for information regarding S&H's insurance coverage on its potatoes. Kraft claims he told Sanders he was going to use S&H's actual production history (APH) as part of a written agreement application and that Sanders gave him permission to do so by faxing Kraft the page. Kraft claims Sanders said something to him to the effect that Kraft could use it for a written agreement.

Sanders, however, testified that he gave S&H's production history to Kraft for informational purposes about crop insurance production history requirements because Kraft said he was interested in potato farming and in obtaining insurance. Sanders further testified that S&H never had an agreement to partner with Kraft in 2003 to grow potatoes and never gave Kraft permission to submit its production history to RMA to request a written agreement.

Streifel prepared the application for a written agreement, signed by Kraft on March 9, 2003. It stated, "Producer is requesting potato coverage for Burleigh County. This is land he has rented in the past. He will sharecrop with S&H Potato, Inc. of Jamestown. The APH data is enclosed for similar land in McLean County . . . . Producer feels it is imperative he get potato insurance." Streifel stated he submitted the APH of S&H with the application to get a better yield on the insurance and conceded he was not aware of the three-year production history requirement.

The partnership Kraft alleges existed between him and S&H did not have any terms, and Kraft never made any arrangements as to who would perform the labor for this alleged partnership or how this alleged partnership would divide profits and expenses. Kraft conceded it is possible Sanders never understood there to be an agreement to partner between Kraft and S&H, and stated, "I don't even know if you could consider it really a partnership we had."

The application for written agreement also stated that the land had been in crop production for 10+ years and that Kraft had operated it for 10 years. Kraft does not dispute that these statements are false, and that he took over the land in 2001. He claims, however, that Streifel got this fact wrong in filling out the application. Kraft signed the request for written agreement certifying that the information was accurate to the best of his knowledge but does not remember whether he read the document.

In April 2003, RMA approved Kraft's request for a written agreement without requiring Kraft to partner with S&H even though Kraft did not provide his own three-year production history. Kraft testified that Streifel told him that RMA offered a yield of 306 bags per acre – less than the 321 bags per acre of S&H – but that if Kraft was willing to accept the yield of 306 bags per acre, they could farm without partnering with S&H. Kraft accepted the terms of the written agreement, and Farmers Crop issued Kraft a policy on the Burleigh County potatoes for 100% ownership of the 2003 potato crop. Kraft signed a certification summarizing the policy coverage.

On an acreage report Kraft signed on June 26, 2003, he did not list anyone under a column for others sharing a percentage interest in the crop

Kraft, Tweeten and Doepke planted and grew potatoes in 2003 in Burleigh County, but the potato crop went bad as a result of a long period of hot weather. Farmers Crop adjusted the loss and

4

paid Kraft an indemnity of $498,778.00. Kraft, Tweeten and Doepke divided the indemnity after accounting for the expenses paid by each during the course of the crop year. On the advice of his accountant, Kraft reported the full amount of the insurance indemnity on his tax returns and deducted the amounts issued to Tweeten and Doepke for their shares as machine hire. He provided each of them with a Form 1099.

Kraft testified he was not familiar with the written agreement process for federal crop insurance and relied on Streifel. According to Kraft, it was Streifel who directed how the 2003 application was submitted. Specifically, Kraft claims that they applied for a single policy in his name because the land lease was entirely in Kraft's name and that was the way Streifel wanted to handle the insurance. Although Kraft could not recall specifically when he first told Streifel about the partnership among Kraft, Tweeten and Doepke, he testified that Streifel was "well aware" of the arrangement because Streifel is a neighbor and friend and they had plenty of meetings with him. Doepke likewise testified that the 2003 policy was issued solely in Kraft's name – rather than showing a one-third share for each of them – because that is how Streifel told them to structure their insurance. Kraft insured the 2003 potatoes for the partnership in his name, and although they were sharing the potato crop, Doepke stated that only Kraft had a claim because the land was in his name. Doepke testified that Streifel told them to structure the insurance that way in both 2003 and 2004.

Streifel denies knowledge of the involvement of Tweeten or Doepke in the 2003 potato crop. Streifel testified that he knew Kraft and Tweeten were "probably doing something" together, but stated that Kraft was the only one Streifel needed to get insurance for because he was the person renting the land and it was going to be in Kraft's name at the Farm Services Agency office.

5

Streifel made handwritten notes that Debtors assert belie his claim that he understood the 2003 potato venture was Kraft's alone. Farmers Crop argued at the hearing on the matter that Streifel made these notes later so they do not bear on his knowledge at the time of the insurance application.

Kraft stated that Tweeten and Doepke could have been called his partners or employees or custom hire. He paid Tweeten and Doepke as custom hire expenses, and they shared the workload. Kraft paid Tweeten and Doepke for their investment which he explained as whatever work they had performed. Tweeten and Doepke received different amounts from the indemnity payment based on how much work they performed. Tweeten testified that the arrangement between Kraft, Doepke and him was an informal partnership.

In the winter of 2004, Kraft, Tweeten and Doepke made plans to expand their potato operation. Streifel also handled the 2004 crop insurance applications for Kraft, Tweeten and Doepke. Long before the March 15 deadline for applying for crop insurance, they kept Streifel advised of their plans. Streifel advised them which counties required written agreements including Sioux and Burleigh Counties. Because Streifel was not aware of the three-year production history requirement for a written agreement, even in 2004, he failed to advise Kraft, Tweeten and Doepke that they were not eligible for written agreements and therefore ineligible for insurance coverage in either Sioux or Burleigh Counties. With clear knowledge of the business relationship between the men, Streifel prepared and submitted separate applications for each of the three, listing each individual's share in the crop at 100%. Kraft testified that whoever among them had contracted to lease the land insured the potatoes for that given piece of land. Doepke also explained that in 2004, Streifel told them how to set up the insurance – they divided up whose names would be on the policy

6

based on who was leasing each piece of land even though they all had a one-third interest in all the potatoes.

The USDA National Appeals Division (NAD), an administrative adjudicatory tribunal, conducted a hearing with regard to an appeal the Krafts filed following RMA's rejection of a 2004 written agreement request, and NAD found that RMA approved the 2003 agreement based on the shared APH yield data of S&H.

## II.  CONCLUSIONS OF LAW

Rule 56 of the Federal Rules of Civil Procedure governs the granting of summary judgment motions and is made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Procedurally, the initial burden is on the moving party to establish the lack of any genuine issue of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986); Dennis v. Novotny (In re Novotny), 224 B.R. 917, 921 (Bankr. D.N.D. 1998).  However, summary judgment will not be granted in the moving party's favor "unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy." Simundson v. United Coastal Ins. Co., 951 F. Supp. 165, 166-67 (D.N.D. 1997) (quotation omitted).  The court views the record in the light most favorable to the nonmoving party and affords that party all reasonable inferences.  Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008).

Section 523(a) of the Bankruptcy Code exempts certain debts from discharge in bankruptcy, including debts for money, property, services, or an extension, renewal, or refinancing of credit, to

7

the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To establish nondischargeability under section 523(a)(2)(A), a creditor must prove by a preponderance of the evidence that:

(1) the debtor made a representation;
(2) at the time the representation was made the debtor knew it was false;
(3) the debtor subjectively intended to deceive the creditor at the time he made the representation;
(4) the creditor justifiably relied on the representation; and
(5) the creditor was damaged.

Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). Exceptions to discharge are narrowly construed against a creditor and liberally in favor of the debtor to effectuate fresh start policy of the Bankruptcy Code. Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999).

The parties agree that Kraft represented on the application that he was not sharing the crop with anyone. Issues of fact remain, however, as to the remaining elements under section 523(a)(2)(A). Specifically, it is unclear whether Kraft knew at the time that he was required to list Tweeten and Doepke or mistakenly believed that he did not need to list them because he was the only person on the land lease. It is also unclear at this point whether Kraft intended to deceive Farmers Crop at the time he made the representation. Indeed, a plausible explanation for the representation made by Kraft is reliance on Streifel's advice and instruction. Although Farmers Crop argues that Debtors cannot claim reliance on Streifel's alleged statements, the Court disagrees. Whether Kraft reasonably relied on Streifel is not the issue; whether Kraft intended to deceive Farmers Crop is, and Streifel's alleged statements bear directly on whether Kraft subjectively intended to defraud Farmers Crop. Kraft's subjective intent is disputed and can only be determined

8

upon consideration of his testimony and credibility and other direct and circumstantial evidence. If Kraft credibly testifies, as his deposition testimony suggests, that he believed it was proper to submit the application as he did because of his name alone on the lease and Streifel's advice, bolstered by testimony about Streifel's similar mishandling of the three farmers' 2004 insurance applications, it is questionable whether Farmers Crop will carry its burden of proving Kraft intended to deceive Farmers Crop. For purposes of the matter presently before the Court, however, fact issues decidedly remain in dispute and preclude summary judgment. Further, factual issues remain as to whether Farmers Crop justifiably relied on the representation because Streifel, Farmers Crop's agent, may have known of Kraft's actual ownership interest in the crop. Finally, factual issues remain as to whether Farmers Crop was damaged insofar as there has been no showing that if the application had been submitted properly with separate applications from Kraft, Tweeten and Doepke, that it would have resulted in any different total indemnity payments for the 2003 crop loss.

There is also no dispute that Kraft represented that he would be partnering with S&H in the 2003 potato crop. There is a question, however, as to whether Kraft knew it was false at the time he made the representation. Kraft alleges he considered partnering with S&H because Streifel said he needed to do so to establish a yield. The written agreement was issued by RMA without reference to S&H, so it was unnecessary for Kraft to partner with S&H and therefore unnecessary to pin down the details of any arrangement. The Court cannot determine whether Kraft intended to deceive Farmers Crop if it remains to be determined whether Kraft knew the statement was false. NAD's finding that RMA approved the agreement based on the shared APH yield of S&H supports

9

a finding by this Court that Farmers Crop relied on the representation, but RMA's lack of requiring Kraft to partner with S&H suggests otherwise.

Viewing the evidence before the Court in the light most favorable to Debtors, the Court finds that Farmers Crop has failed to meet its burden of proving the absence of any genuine issue of material fact as to several elements detailed of Farmers Crops' section 523(a)(2)(A) claim as detailed above.

Based on the foregoing, the Motion for Summary Judgment filed by the Plaintiff Farmers Crop Insurance Alliance, Inc., on August 8, 2008, is hereby DENIED. The matter will proceed to trial.

**SO ORDERED.**

Dated this December 4, 2008.

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**